IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL G. SKENNION )<br>)<br>V.                              )<br>)<br>DORIS GODINEZ, ET AL    ) | 3-04-CV-1260-M |

### MEMORANDUM OPINION AND ORDER

Pursuant to the written consents of the parties and the District Court's order of reassignment filed on October 12, 2004, in accordance with the provisions of 28 U.S.C. § 636(c) came on to be considered Defendant John E. Potter's motion for summary judgment filed on February 28, 2005, Plaintiff's responsive brief filed on March 18, 2005, and Defendant's reply brief filed on April 4, 2005, and having reviewed the parties' briefs, appendices, and declarations made under penalty of perjury, the court finds and orders as follows:

**Statement of the Case**:

Plaintiff was employed as a probationary employee of the United States Postal Service ("USPS") in its Southwest Law Office at Dallas, Texas, in September 1999. On March 13, 2000 he was informed that he was not recommended for permanent employment on March 10, 2000, thus effectively terminating his employment with the USPS. After unsuccessfully pursuing administrative remedies he filed a complaint in the Southern District of Florida on November 7, 2003, in which he named the Postmaster General and others as defendants.

On June 3, 2004, pursuant to the order of the District Court at Fort Lauderdale, Florida, this action was transferred to the Northern District of Texas and assigned to the Honorable Barbara Lynn. Judge Lynn entered orders in the case, including her order filed on August 25, 2004, requiring the parties to submit a proposed scheduling order. The case was then transferred to the

magistrate judge pursuant to the written consents[1] of the parties and 28 U.S.C. § 636(c). Thereafter, the motion to dismiss filed by the Defendants (except for the Postmaster General) was granted on November 3, 2004.

### 1. Applicable law - Standard of review:

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories ... together with the [declarations under penalty of perjury] ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c); see Celotex Corp. v. Catreet, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). A moving party bears the initial burden of identifying those portions in the record which demonstrate the absence of a genuine issue of fact, but is not required to negate elements of the non-movant's case. Id. at 322-25. Once a movant meets his burden, the non-movant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. Matsushita Elec. Indus. Co. v. Zenith, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-movant, there is no genuine issue of material fact. Hunt v. Cromartie, 526 U.S. 541, 549, 119 S.Ct. 1545 (1999). However, a party opposing summary judgment may not rest on mere conclusory allegations unsupported by specific facts presented in affidavits, declarations or admissions. Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S.Ct. 3177 (1990). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

---

[1] Construing Plaintiff's letter received on January 31, 2005, as a motion to withdraw his consent, on March 2, 2005, the magistrate judge denied his motion as well as his motion to transfer venue.

as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505 (1986); see also Friou v. Phillips Pet. Co., 948 F.2d 972, 974 (5th Cir. 1991).

**2. Undisputed facts:**

The facts on which the parties agree or on which there has not been presented any competent controverting evidence are as follows:

Michael G. Skennion is a white male citizen who was over the age of 40 years at both the time he was hired and thereafter when he was refused permanent employment with the USPS.

In September 1999 the USPS opened a new regional legal office, the Southwest Law Office, at Dallas, Texas, to which Doris Godinez-Phillips was named as the Managing Counsel.

A selection committee consisting of then currently employed lawyers with the USPS was created to interview applicants for positions as probationary lawyers at the Dallas legal office. Although Plaintiff was not one of the highest rated by the selection committee, Ms. Godinez-Phillips subsequently interviewed him and hired him as a probationary employee on or about September 13, 1999.

The attorney staff employed at the Dallas legal office during Mr. Skennion's tenure included ten attorneys consisting of six males - one of whom was of Hispanic ancestry with the remainder being white and only two of whom, including Plaintiff, were over the age of 40 years - and four females - one of whom was of Hispanic ancestry, one of whom was African-American and only one of whom was over the age of 40 years.

Upon commencement of his employment Plaintiff was placed under the direct supervision of Sandra McFeeley. McFeeley criticized and corrected drafts of his work product on numerous

occasions. In his performance evaluation on February 11, 2000, two deficient areas of performance were noted.

On February 17, 2000, Plaintiff was assigned to the litigation team headed by Yolanda Pizarro. On March 6, 2000, Ms. Godinez-Phillips told Skennion that she did not believe he was a good fit with the office and told him that if he did not resign she was considering terminating him at the end of his probationary period.

By letter dated March 8, 2000, Ms. Godinez-Phillips notified Plaintiff that he would not be considered for permanent employment, that he would again be offered an opportunity to resign, but that otherwise he would be removed from employment effective March 10, 2000. Due to his absence because of illness Skennion did not receive a copy of the letter until March 13, 2000.

### 3. Analysis, Findings and Conclusions:

In his motion for summary judgment Defendant contends that Plaintiff's claims are subject to analysis under the burden-shifting framework established in McDonnell Douglas v. Green, 411 U.S. 792, 801-803, 93 S.Ct. 1817 (1973). Skennion on the other hand argues that there is direct evidence of discrimination on the basis of age, sex and gender, and that therefore the McDonnell Douglas paradigm is inapplicable. In support of his argument Skennion refers to the testimony of witnesses given under oath at the administrative level. (Defendant's Appendix 43-67). However, he fails to identify the specific testimony of any person to demonstrate evidence of direct discrimination. As the Fifth Circuit has stated: "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002) (Emphasis added); see also West v. Nabors Drilling U.S.A., Inc., 330 F.3d 379, 384, at n. 3 (5th Cir. 2003). Plaintiff has failed to present direct competent,

admissible evidence on which a fact finder could determine that he was a victim of unlawful discrimination. Therefore, the McDonnell Douglas burden-shifting framework applies to each of his claims.[2]

### a. Title VII claims:

In order to establish a prima facie case pursuant to Title VII Plaintiff must show: (1) he was a member of a protected class; (2) he was qualified for permanent employment as an attorney with the USPS; (3) he suffered an adverse employment action; and (4) others similarly situated were treated more favorably. See Geier v. Medtronic, Inc., 99 F.3d 238, 241 (7th Cir. 1996) (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824).

Defendant does not contest the first or third elements of a prima facie showing, but argues that Skennion cannot meet his burden on the remaining two.

Potter argues that in light of evidence with respect to Plaintiff's deficiencies as a lawyer reflected in the declarations of Doris Godinez-Phillips, Sandra McFeeley and Yolanda Pizarro that he was not qualified to be permanently hired. Since there is no dispute that Skennion satisfied the requisite licensing requirements and was under no physical or mental impairment which affected his ability to perform as a lawyer, the court is of the opinion that the analysis expressed in Kesterson v. R.R. Donnelley & Sons Co., 2002 WL 923921, *3 (N.D. Tex. May 6, 2002) correctly addresses this element, and therefore I conclude that this element is satisfied.

With respect to the fourth element, disparate treatment, Skennion has failed to sustain his burden. He was one of five individuals who were hired as probationary employees at the Southwest

---

[2] McDonnel Douglas applies to Skennion's age discrimination claim as well as his claims brought under Title VII. E.g. see Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999).

Law Office, all of whom were white, two women and three men. At the end of the probationary period the other two males (Plaintiff's sex) were permanently hired as were all of the women. Any claim that Plaintiff was not offered permanent employment as on account of his gender is foreclosed by the retention of two similarly situated persons of the same sex. Similarly he cannot show that he was treated differently on account of his race, since all of the probationary attorneys who were retained were also white.

Plaintiff's contention that he was treated differently during the term of his employment is irrelevant to the fourth element. Moreover, although his numerical case load was higher than other attorneys, it was only half that of Eric Blayne Fryda, another white male employed at the Southwest Legal Office. As Mr. Fryda explained in light of Skennion's 17 year career as an attorney, it was not unreasonable for him to be assigned a heavier case load.

The summary judgment record also contains the testimony of Julie Rosiles who expressed the opinion that Ms. Godinez-Phillips exhibited a more friendly demeanor towards employees of Hispanic ancestry than employees of other ethnicities.  She also opined that the work product of Elena Alejandre[3] was less often "corrected" than that of Plaintiff's and that she believed that changes made to Plaintiff's letters, etc. were often frivolous or unnecessary. Neither of these circumstances raises any inferences of race or sex discrimination, particularly in light of the fact that all the attorneys offered permanent positions were the same race as Skennion and two were males as well.

Alternatively, and assuming arguendo that Skennion has made a prima facie showing with respect to the elements of his Title VII claims, Plaintiff has failed to demonstrate the existence of

---

[3]Ms. Alejandre was transferred in from a USPS office located in California and had been an attorney with the Postal Service since 1982. Therefore, she clearly was not similarly situated to Plaintiff or the other probationary attorneys hired in September 1999.

6

genuine issues of fact. Once a Plaintiff has satisfied his initial burden, creating a rebuttable presumption of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for his action. Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999).

In the present action Defendant has produced evidence that Plaintiff was denied permanent employment as an attorney, specifically because of the unsatisfactory quality of his performance and of his legal work product during his probationary employment. (See Defendant's Appx. Declaration of Dorris Godinez-Phillips at 3-5; Declaration of Sandra McFeeley at 10-12; Declaration of Yolanda M. Pizarro at 30-31; and 34-41).

Given the non-discriminatory reasons for the decision not to hire Plaintiff as a permanent employee, Skennion is required to demonstrate the existence of a genuine issue of fact, that is that there is evidence from which the jury could find that the stated reasons for the employment action were pretextual.

In an effort to demonstrate that the stated reasons were pretextual, Skennion has submitted two declarations and in addition relies on the testimony of Eric Fryda and Julie Rosiles at the administrative hearing.

Evidence sufficient to raise an issue as to whether the non-discriminatory reasons given were pretextual must be admissible, competent evidence. Therefore an employee's subjective belief of discrimination without more is not sufficient to foreclose the granting of summary judgment. E.g., Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).

On one occasion Ms. Rosiles, a legal secretary, prepared a transmittal letter for Plaintiff's signature which was identical to a form which had previously used by another attorney, Elena

Alejandre, see n.3, supra, which was "corrected" before it was sent out. Ms. Rosiles was of the opinion that Ms. McFeeley was overly critical of Plaintiff's work.

The fact the Ms. McFeeley was a demanding supervisor is not in dispute. However, it is undisputed that her expectations applied to all lawyers under her supervision. (See Def.'s Appx. Declaration of Judith Zehner at 27). The fact that Ms. McFeeley was a "tough grader" and the fact that Ms. Godinez-Phillips reassigned Plaintiff to a second direct supervisor during his probationary period are employment decisions which without more are not susceptible to judicial scrutiny. Thornborough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 647 (5th Cir. 1985); Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1508 (5th Cir. 1988). According to Ms. Godinez-Phillips, she reassigned Skennion to Ms. Pizarro's team in order to get a "second opinion" before deciding on his future employment with USPS. (See also Declaration of Yolanda M. Pizarro).

Skennion also relies on an incident which occurred in the first week of his employment, the specifics of which are quite nebulous. (Cf. Plaintiff's Declaration executed on April 8, 2005 to Ms. Godinez-Phillips's hearing testimony at Def.'s Appx. 79). However, this incident is irrelevant to Plaintiff's Title VII claims. Neither version of the incident involves even a hint of animus based on Plaintiff's race or sex. Further, given that it took place at the outset of his probationary period, with two satisfactory performance evaluations intervening prior to the decision not to offer him permanent employment, whatever remarks Ms. Godinez-Phillips may have made clearly constitute stray remarks. E.g., Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 405 (5th Cir. 2001). Finally any remarks could not possibly have established discriminatory animus, since as the person responsible for hiring Plaintiff, Ms. Godinez-Phillips was unquestionably aware of both his gender

8

and age when Skennion was hired. See Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996)(adopting the "same actor" inference when the hiring and terminating person is the same).

When the declarations of Skennion are stripped of inadmissable hearsay, conclusory statements, and subjective beliefs (many of which are patently scurrilous) it is clear that he has failed to present admissible evidence from which a reasonable jury could find that the stated reasons for refusing to offer him permanent employment as a lawyer with the USPS were pretextual.

### b. Age Discrimination in Employment Act (ADEA) claim:

The elements of a prima facie showing which a plaintiff must show are much the same as those which apply in a Title VII claim, to wit: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age." Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005) (citing Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004).

It is undisputed that Skennion was over the age of 40 years when he was hired as a probationary employee.[4] Defendant also concedes that he suffered an adverse employment action. He joins issue on whether Plaintiff was qualified as well as the fourth element - that he was discharged on account of his age.[5] There is absolutely no evidence in the record from which any inference of age discrimination could be drawn. Further, it is entirely incredible to find that Ms.

---

[4]Since the individuals newly-hired in September 1999 were hired as probationary rather than permanent attorneys by the USPS it is wholly unsurprising that they were younger than 40 years of age with the exception of Plaintiff.

[5]Under the undisputed facts in this case the relevant issue with respect to the fourth element is "whether Skennion was discharged because of his age."

9

Godinez-Phillips, the person who offered Plaintiff probationary employment, knowing full well his age and professional background, would have refused to recommend him for permanent employment six months later based upon his age. See Brown v. CSC Logic, Inc., supra, at 658.

It is therefore ordered that Defendant John E. Potter's motion for summary judgment is granted. A copy of this order shall be transmitted to Plaintiff and to counsel for Defendants.

SIGNED this __20th__ day of April, 2005.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE